UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AIMEE CHRISTINE M. BJORNSTAD, )<br>)<br>*Plaintiff*  )<br>)<br>v.  )<br>)<br>KILOLO KIJAKAZI,  )<br>Acting Commissioner of Social )<br>Security,  )<br>)<br>*Defendant*  ) | Cause No. 3:20-CV-853-RLM |

ORDER AND OPINION

Aimee Christine Bjornstad, by her father and court appointed guardian, Thomas Bjornstad, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* The court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The court took the appeal under advisement following a telephonic hearing on November 1, 2021, and for the following reasons REVERSES the Commissioner's decision and REMANDS for further proceedings.

I.   BACKGROUND

Ms. Bjornstad suffered several injuries, including severe head injuries when she was struck by a drunk driver in 2003. She was seventeen years old at the time and spent nearly three weeks in the hospital. In the years to follow, Ms.

Bjornstad sought treatment from a number of medical providers for the various mental and physical conditions that resulted from the car accident.

Ms. Bjornstad has made progress but hasn't fully recovered. She earned a college degree and has taken on various hobbies, but required several accommodations to complete her college degree and reports that she still relies extensively on her parents to navigate daily life. Ms. Bjornstad applied for disability benefits in 2018. Ms. Bjornstad's applications were denied initially, on reconsideration, and after a hearing held on November 5, 2019, where Ms. Bjornstad, Thomas Bjornstad (her father and court appointed guardian), and a vocational expert testified.

The ALJ issued an unfavorable decision to Ms. Bjornstad on December 10, 2019. The ALJ concluded that:

1. Ms. Bjornstad hadn't attained age 22 as of the alleged onset date.

2. Ms. Bjornstad engaged in substantial gainful activity in 2015 and the fourth quarter of 2017. 20 C.F.R. §§ 404.1420(b), 404.1571 *et seq.*, 416.920(b), 416.971 *et seq.*

3. There was at least one continuous 12-month period during which Ms. Bjornstad didn't engage in substantial gainful activity.

4. Ms. Bjornstad has the following severe impairments: mild neurocognitive disorder/auditory hearing processing deficiency due to traumatic brain injury, post-traumatic stress disorder, major depressive disorder, attention deficit hyperactivity disorder, narcolepsy/cataplexy, generalized anxiety disorder, and a history of left forearm fixation with residual limitations in forearm rotation. 20 C.F.R. §§ 404.1520(c), 416.920(c).

5. Ms. Bjornstad doesn't have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. The ALJ considered Listings 1.07 (fracture of an

2

upper extremity), 11.02 (epilepsy), 11.18 (traumatic brain injury), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.11 (neurodevelopmental disorders) and 12.15 (trauma- and stressor-related disorders). Ms. Bjornstad didn't meet Listings 12.04, 12.06, 12.11, and 12.15 because she had no more than mild or moderate limitations for paragraph B and didn't meet paragraph C criteria.

6. Ms. Bjornstad has the residual functional capacity to perform a full range of work at all exertional levels subject to nonexertional limitations. Ms. Bjornstad should avoid work activity requiring forceful grip or torque with the left upper extremity. She can tolerate no more than moderate levels of noise. She should avoid any exposure to unprotected heights, open flames, large bodies of water and unguarded moving machinery. She should avoid work activity requiring interacting with the general public, but can understand, remember and carry out simple instructions and tasks; make judgments on simple work-related decisions; respond appropriately to occasional and superficial interactions with coworkers and supervisors; respond appropriately to usual work situations; and deal with routine changes in a routine work setting.

7. Ms. Bjornstad was unable to perform any past relevant work at all relevant times. 20 C.F.R. §§ 404.1565, 416.965.

8. Ms. Bjornstad was a younger individual (seventeen years old) at the alleged onset date. 20 C.F.R. §§ 404.1563, 416.963.

9. Ms. Bjornstad has at least a high school education and is able to communicate in English. 20 C.F.R. §§ 404.1564, 416.964.

10. Transferability of job skills isn't material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Ms. Bjornstad is "not disabled." 20 C.F.R. § 404, Subpt. P, App. 2.

11. Considering Ms. Bjornstad's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Bjornstad can perform. The ALJ indicated that she considered the vocational expert's testimony that Ms. Bjornstad would be able to perform the requirements of occupations such as: janitor (25,000 positions nationally), industrial cleaner (12,000 positions nationally), and routing clerk (40,000 positions nationally).

The ALJ concluded that Ms. Bjornstad wasn't disabled within the meaning of the Social Security Act and so wasn't entitled to disability benefits. When the Appeals Council denied her request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

## II. STANDARD OF REVIEW

"The Social Security Act, 42 U.S.C. § 405(g), requires the Commissioner's findings to be sustained if supported by substantial evidence." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). The issue before the court isn't whether Ms. Bjornstad is disabled, but whether substantial evidence supports the ALJ's decision that she wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner. Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000). Instead, the court must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) (internal quotations omitted).

4

While the ALJ isn't required "to address every piece of evidence or testimony presented, she must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160. ALJs must "sufficiently articulate their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

### III.  DISCUSSION

Ms. Bjornstad argues that (1) the ALJ erred in assessing Ms. Bjornstad's subjective symptoms, (2) the ALJ erred in assessing the medical evidence, (3) the ALJ improperly considered whether Ms. Bjornstad's impairments were equally severe to listed impairments at Step Three, (4) the ALJ improperly crafted the residual functional capacity, and (5) the ALJ improperly concluded that Ms. Bjornstad isn't disabled at Step Five. Ms. Bjornstad's first two arguments are integral to the final three arguments.

*A.  The ALJ's assessment of Ms. Bjornstad's subjective symptoms.*

During the state agency investigation and at the hearing, Ms. Bjornstad testified about her subjective symptoms, that is, the way her conditions affected her day-to-day life. When evaluating subjective symptoms, an ALJ first determines whether there's an underlying impairment that could reasonably be

5

expected to produce the reported symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). If there is, the ALJ then evaluates the intensity, persistence, and limiting effects of the claimant's symptoms and determines the extent to which they could affect the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). The ALJ is to consider "all of the available evidence from [the claimant's] medical and nonmedical sources about how [the claimant's] symptoms affect [the claimant]." Id. § 404.1529(c)(1), 416.929(c)(1). This includes work history, statements by others, daily activities, frequency and intensity of the symptoms, precipitating and aggravating factors, treatment, and measures taken to relieve the symptom. Id. § 404.1529(c)(1), 416.929(c)(1). The ALJ considers whether there are inconsistencies within the evidence. Id. §§ 404.1529(c)(4), 416.929(c)(4). Because the ALJ is best situated to evaluate credibility, the ALJ's assessment of subjective symptoms must be "reasoned and supported" and is only overturned if "patently wrong." Shideler v. Astrue, 688 F.3d 306, 311–312 (7th Cir. 2012). The ALJ must confront evidence that supports an opposite conclusion and explain why the ALJ rejects it but doesn't need to address every piece of evidence. Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014).

Ms. Bjornstad and her parents described the various ways that her conditions limit her ability to engage in daily activities. For instance, she can water her plants, but often forgets to do so and the plants end up dying; she can cook meals for her parents, but only with near constant supervision so that she doesn't lose track and burn whatever she's cooking; she can wake herself up in the morning, but only after setting reminders to go to bed no later than a specific

6

time, setting multiple morning alarms, and having her service dog sit underneath her once she's awake so that she can't doze off again.

The ALJ found that Ms. Bjornstad's "statements about the intensity, persistence and limiting effects of her symptoms . . . are inconsistent because the evidence does not support the severity of limitation the claimant contends." The ALJ considered daily activities, Ms. Bjornstad's work history, a clinician's recommendation that she get a job with eight-hour shifts, a clinician's advice to use reminders and lists to cope with her forgetfulness, a clinician's observations that Ms. Bjornstad had intact judgment, insight, and memory, reports that she maintained her own bank accounts, and doctors' reports that she could understand verbal instructions. The ALJ relied on Ms. Bjornstad's self-reported activities to show that she was independent so her subjective symptoms must not have been as limiting as she claimed.

Ms. Bjornstad argues that the ALJ improperly found her subjective symptoms to be not credible by conflating Ms. Bjornstad's ability to do an activity with an ability to do the activity effectively, efficiently, and independently. The Commissioner responds that the ALJ reasonably found Ms. Bjornstad's subjective symptom testimony to be not credible and that Ms. Bjornstad merely offers a different interpretation of the evidence.

Although the ALJ considered various evidence, her credibility determination for Ms. Bjornstad's subjective symptoms lacks a logical bridge because of the way she approached evidence of Ms. Bjornstad's daily activities. Given the number of times the ALJ invoked Ms. Bjornstad's daily activities, these

7

activities were a major reason for the ALJ's credibility determination. The issue then is how the ALJ credited Ms. Bjornstad's statements that she could do activities but ignored Ms. Bjornstad's stated limitation. Ms. Bjornstad and her parents explained the activities she can do and almost uniformly described her as doing the activities slowly, incompletely, and with frequent reminders or supervision from her parents. The ALJ appears to have paid attention to the activities, but not to the limitations. For instance, the ALJ noted that Ms. Bjornstad "can shop efficiently," but doesn't explain why she rejected or ignored testimony that Ms. Bjornstad takes two to three hours to grocery shop, often overlooks items, and becomes distracted. The ALJ noted that Ms. Bjornstad does her own laundry, but omits that Ms. Bjornstad explained that it takes several days to complete because she forgets that she put laundry in the washer or dryer. The ALJ described how Ms. Bjornstad independently pays her own bills, despite Ms. Bjornstad's reliance on autopay. There is no logical bridge to the ALJ's determination when the ALJ's principal evidence show severe limitations. The ALJ improperly focused on the parts of the evidence that supported her ultimate conclusion while ignoring evidence that would undermine the ultimate conclusion. See Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014); Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014).

The court takes no position on whether the evidence as a whole requires a the ALJ to find that Ms. Bjornstad's subjective symptoms are credible. It simply concludes that the ALJ either improperly ignored this related evidence or had reason to reject it but didn't explain her reasoning sufficiently. See Scott v.

8

Barnhart, 297 F.3d 589, 595 (7th Cir. 2002). Because this finding was critical to much of the ALJ's decision, remand is appropriate so the ALJ can either properly consider the subjective symptoms or more fully explain her reasoning.

### B. The ALJ's assessment of medical evidence.

Ms. Bjornstad has a long history of medical providers between the time of her car accident in 2003 and present. She has seen psychologists, neurologists, audiologists, primary care physicians, and social workers, among others. Ms. Bjornstad argues that the ALJ improperly considered medical evidence; she claims the ALJ didn't properly consider the five factors required by regulation, selectively focused on evidence that supported a finding of not disabled, and otherwise made unsupported conclusions. The Commissioner says the ALJ properly considered the medical evidence and to remand would really be to reweigh the evidence, a task not assigned to this court.

When determining how persuasive medical opinions and previous administrative medical findings are, an ALJ must consider them "together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Of the factors listed in paragraphs (c)(1) through (c)(5), "[t]he factors of supportability . . . and consistency . . . are the most important." Id. §§ 404.1520c(b)(2), 416.920c(b)(2). Therefore, an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [the claimant's] determination or decision."

9

Id. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ doesn't need to discuss every piece of evidence but must provide a "logical bridge." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

The ALJ addressed some specific medical opinions from the record. She described Dr. Nordstrom's observation that Ms. Bjornstad had difficulty with long-term memory and sustaining concentration but was otherwise pleasant and could get along with others. The ALJ noted Dr. Gupta's observation that Ms. Bjornstad could understand with normal concentration, memory, and social interactions. The ALJ explained that Dr. Hoyer's opinion—that Ms. Bjornstad was "not able to hold a full time job"—wasn't persuasive since it concerned an issue reserved to the Commissioner. She explains that "there are several other opinions regarding the claimant's functioning," and that the medical opinions are "somewhat consistent with and supported by the substantial evidence of record."

The ALJ's explanation of the medical evidence falls short. Though the ALJ concluded that the medical evidence was somewhat consistent and supported by evidence, she doesn't say why. See Scott v. Barnhart, 297 F.3d 589, 596 (7th Cir. 2002). She discusses the opinions of Drs. Nordstrom, Hoyer, and Gupta, but each of those discussions mentions only one or two findings or opinions by each doctor. The ALJ doesn't say why those specific observations or those of other providers make any of the medical evidence consistent or supported. See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Without a more thorough explanation,

the court can't determine how the ALJ considered the medical evidence and whether the ALJ's consideration complied with the regulations.

Despite the flaws already discussed, the ALJ may disregard a medical opinion on an issue reserved to the Commissioner, such as Dr. Hoyer's opinion that Ms. Bjornstad couldn't work. 20 C.F.R. §§ 404.1520b(c), 416.920c(b)(2). The Commissioner is also correct that the ALJ doesn't need to address every piece of evidence, so the court doesn't direct the ALJ to consider certain evidence in a certain way on remand. See Scott v. Barnhart, 297 F.3d 589, 596 (7th Cir. 2002). Nevertheless, the ALJ's explanation was too cursory to provide review, especially with respect to supportability and consistency, and remand is appropriate so the ALJ can more thoroughly consider the medical evidence or more thoroughly explain how she did so.

> C. *The ALJ's determination that Ms. Bjornstad's conditions aren't severe enough to meet or medically equal any listed impairments.*

At Step Three, the ALJ determined that Ms. Bjornstad's conditions didn't meet and weren't the medical equivalent of any impairments listed in the regulations. Ms. Bjornstad argues that the ALJ improperly ignored critical evidence and otherwise didn't create an accurate and logical bridge at Step Three.

The ALJ considered several impairments including anxiety or obsessive-compulsive disorders (Listing 12.06) and neurodevelopmental disorders (Listing 12.11). See 20 C.F.R. § 404, Subpt. P, App. 1, §§ 12.06, 12.11. The ALJ

11

concluded that Ms. Bjornstad wasn't disabled under Listing 12.06 because she met neither paragraph B nor paragraph C's criteria. Ms. Bjornstad had to meet either set of criteria to qualify as disabled under Listing 12.06. The ALJ concluded that Ms. Bjornstad wasn't disabled under Listing 12.11 because she didn't meet the paragraph B criteria.

The ALJ specifically found Ms. Bjornstad didn't meet the paragraph B criteria because her limitations were moderate in the area of concentrating, persisting, or maintaining pace, and were mild in the area of adapting or managing herself. The ALJ addressed each area separately but followed essentially the same logic—Ms. Bjornstad could do a number of activities independently and effectively, so her limitations couldn't be so bad.

The ALJ then found that Ms. Bjornstad didn't meet the paragraph C criteria. To meet paragraph C, a claimant must have mental conditions that are serious and persistent. Id. §§ 12.06C, 12.11C. Mental conditions are serious and persistent if (1) the conditions have been medically documented for at least two years, (2) there's evidence of medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms or effects of the disorder, and (3) the claimant has marginal adjustment, that is, has a minimal capacity to adapt to change. Id. §§ 12.06C, 12.11C. The ALJ didn't address the specific elements but said that "[t]here is no convincing evidence in the record that the claimant's mental disorders are serious and persistent."

12

Remand is appropriate because the ALJ relied on her subjective symptom and medical evidence assessments to conclude that Ms. Bjornstad wasn't disabled as Step Three. To conclude that Ms. Bjornstad's paragraph B limitations were mild or moderate, the ALJ relied on Ms. Bjornstad's daily activities and work history, again making the mistake of ignoring or inadequately explaining the limitations that were described by the evidence of Ms. Bjornstad's activities and work history. The ALJ then found that Ms. Bjornstad's mental conditions didn't meet paragraph C criteria, saying that "[t]here is no convincing evidence in the record that the claimant's mental disorders are serious and persistent." Ms. Bjornstad has pointed to evidence that she's received treatment lasting more than two years for her mental conditions, which suggests the ALJ found that she didn't meet paragraph C because she had better than marginal adjustment. A finding that Ms. Bjornstad had better than marginal adjustment must be reconsidered once the subjective symptoms and medical evidence are properly considered—either could support a finding of marginal adjustment. The ALJ must reconsider these Step Three Listings on remand after properly assessing Ms. Bjornstad's subjective symptoms and medical evidence.

  D.  *The ALJ's residual functional capacity determination.*

The residual functional capacity is an assessment of what work-related activities a claimant can perform despite her limitations. Dixon v. Massanari, 270 F.3d 1171, 1178 (7th Cir. 2001). When determining an individual's residual functional capacity, the ALJ must consider the combined effects of all limitations

13

that arise from medically determinable impairments based on the record as a whole, even those that wouldn't be considered severe in isolation. Thomas v. Colvin, 745 F.3d 802, 807 (7th Cir. 2014). The residual functional capacity determination is "inherently intertwined with matters of credibility." Outlaw v. Astrue, 412 F. App'x 894, 897 (7th Cir. 2011).

The ALJ determined that Ms. Bjornstad had a residual functional capacity to "perform a full range of work at all exertional levels" with nonexertional limitations. Her residual functional capacity included that:

> she can understand, remember and carry out simple instructions and tasks, she can make judgments on simple work-related decisions, she can respond appropriately on occasional and superficial interactions with coworkers and supervisors, . . . she can respond appropriately to usual work situations, and she can deal with routine changes in a routine work setting.

Ms. Bjornstad argues that the ALJ's residual functional capacity finding didn't account for Ms. Bjornstad's difficulty being on-time to and on-task at work given her limitations in concentration, persistence, and pace. She argues that had the ALJ properly considered the subjective symptom evidence and medical evidence, the ALJ would have crafted a residual functional capacity with greater limitations. The Commissioner argues that substantial evidence supports the residual functional capacity finding and Ms. Bjornstad merely asks the court to impose its own credibility findings and weighing of the evidence.

As explained earlier, the ALJ either improperly considered Ms. Bjornstad's subjective symptoms and medical evidence, or inadequately explained why she

made certain findings as to the credibility of Ms. Bjornstad's subjective symptoms and the consistency and supportability of the medical evidence. Both areas of analysis touch upon potential limitations related to concentration, persistence, and pace as well as timeliness. The residual functional capacity must reflect the combined effects of all limitations that arise from medically determinable impairments based on the record as a whole, even those that wouldn't be considered severe in isolation. Thomas v. Colvin, 745 F.3d 802, 807 (7th Cir. 2014). Because the residual functional capacity determination is inextricably connected to the ALJ's flawed subjective symptom analysis and medical evidence assessment, remand is required for a residual functional capacity based on properly assessed subjective symptoms and medical evidence.

      E.      *The ALJ's final determination that Ms. Bjornstad isn't disabled.*

After the ALJ determines a claimant's residual functional capacity, the Commissioner bears the burden at step five of an ALJ's disability analysis to provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do given the residual functional capacity, age, education, and work experience of the claimant. See Britton v. Astrue, 521 F.3d 799, 803–804 (7th Cir. 2008). The Commissioner often relies on vocational expert testimony to meet this burden. Vocational expert testimony must be reliable to satisfy the Commissioner's burden and be eligible to support a disability decision. See Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir.

15

2002). To elicit reliable testimony from a vocational expert, the hypothetical questions posed to the expert should be representative of all the claimant's limitations supported by medical evidence in the record, just as required of the residual functional capacity. See Kasarsky v. Barnhart, 335 F.3d 539, 544 (7th Cir. 2002). In her residual functional capacity report, "an ALJ should refer expressly to limitations in concentration, persistence and pace in the hypothetical in order to focus the [vocational expert]'s attention on these limitations and assure reviewing courts that the [vocational expert]'s testimony constitutes substantial evidence of the jobs a claimant can do." O'Connor-Spinner v. Astrue, 627 F.3d 614, 620–621 (7th Cir. 2010).

Ms. Bjornstad argues that the ALJ's determination that she wasn't disabled because she could perform a job in the national economy is unsupported. She reiterates her arguments about the residual functional capacity determination since that determination is intertwined with a disability determination. She also claims the decision should be reversed or remanded because the vocational expert testified that someone who's late to work once per week couldn't find work in the national economy and Ms. Bjornstad presented evidence that she has frequent and severe difficulties with tardiness and therefore wouldn't be employable. She also points out that the ALJ doesn't address Ms. Bjornstad's service dog, despite the vocational expert's testimony that having a service dog would require a work accommodation. The Commissioner responds generally that the decision is supported by substantial evidence and that the ALJ was permitted to ignore the service dog because Ms.

16

Bjornstad presented no evidence that the service dog is required to complete work tasks.

Remand is appropriate at Step Five because the ALJ's decision is dependent on the flawed subjective symptom analysis and medical evidence assessment. Remand is also appropriate because of the gaps between the vocational expert's testimony and the decision. First, Ms. Bjornstad's subjective symptom claims support a finding that she is consistently late to work, and given the vocational expert's testimony, this would suggest a disability. On remand, the ALJ must consider whether Ms. Bjornstad's reassessed subjective symptoms paired with the vocational expert's testimony would support finding a disability based on tardiness and inability to focus. Likewise, the ALJ doesn't explain how Ms. Bjornstad could perform a job in the national economy with a service dog. The Commissioner is right that Ms. Bjornstad hasn't claimed the service dog is required to perform work, but the service dog is required to remind Ms. Bjornstad to take medication and to deal with cataplexy, and regardless of whether the service dog helps with work, it would necessarily be present at the workplace. The vocational expert's testimony suggests that this would have an effect on Ms. Bjornstad's ability to find work, and the ALJ doesn't create a logical bridge when she leaves that substantial condition unaddressed.

IV. CONCLUSION

Based on the foregoing analysis, the court concludes that the ALJ erred in assessing Ms. Bjornstad's subjective symptoms and medical evidence, and that these errors were critical to the ALJ's later determinations as to Ms. Bjornstad's disability status. The Commissioner's decision is therefore REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: November 9, 2021

/s/ Robert L. Miller, Jr.
Judge, United States District Court